## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jonathan G. Wendland, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) Civ. No.: 07-1493 (HHK) | |
| v. | ) ECF | |
| | ) | |
| Carlos Gutierrez, Secretary | ) | |
| United States Department of Commerce, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### I.     INTRODUCTION

Plaintiff's Opposition has not shown that this Court has jurisdiction over this matter.  Indeed, as explained in Defendant's Motion to Dismiss, the decision whether to convene a Record Examination Board ("REB") is committed to the discretion of the Director of NOAA's Commissioned Officer Corps ("Director").  Since it is a decision committed to the agency, neither the Administrative Procedure Act, 5 U.S.C. §§ 702 *et seq.*, nor any other statute, confers jurisdiction upon the Court in this matter.  Accordingly, this case should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). 12(b)(1).

## II.    ARGUMENT

### A.    Plaintiff May Not Have Standing To Bring This Suit.

Recognizing that the Court lacks subject matter jurisdiction in this case, Plaintiff conflates standing and subject matter jurisdiction by arguing that his alleged injury can be redressed by a favorable decision from the Court.  Opp. at 1, 5.  But Plaintiff's assertion is an argument for standing to sue, not the Court's subject matter jurisdiction.  See Internat'l Brotherhood of Teamsters v. Transp. Sec. Admin., 429 F.3d 1130, 1133-34 (D.C. Cir. 2005) (setting forth the standard for alleging standing).

In any event, Plaintiff's own argument on standing undermines his claim here. Specifically, Plaintiff alleges that he was injured due to Defendant's failure to promote him to the rank of Lieutenant Commander.  Opp. at 1, 5; see also Complaint "(Compl.)" at ¶9-19.  Plaintiff also alleges that Defendant failed to promote him and eventually removed him from federal service.  Opp. at 1,5, see also Compl. at ¶ 19.  Plaintiff then argues that his injury is likely to be redressed by a favorable decision from this Court. Opp. at 1, 5.  Contrary to Plaintiff's assertion, as set forth in Plaintiff's own Complaint, a favorable decision will only require Defendant to convene the REB, not effect the promotion that Plaintiff wanted.  See Compl. at ¶ 34 (requesting that "the Honorable Court [] ORDER the Defendant **to convene an REB**"; "FURTHER ORDER Defendant to **convene a promotion Board** . . . for the purpose of determining if Plaintiff would have been promoted, [sic] should Plaintiff's records be expunged.") (emphasis added).

It is well established that to have standing, a plaintiff must allege "(1) a personal injury-in-fact that is (2) fairly traceable to the defendant's conduct and (3) redressable by the relief requested."  Internat'l Brotherhood, 429 F.3d at 1134.  Furthermore, "[w]hen

redress depends on the cooperation of a third party, it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." <u>Miami Bldg. & Const. Trades v. Sec'y of Defense</u>, 493 F.3d 201, 205 (D.C. Cir. 2007) (internal quotations and citations omitted). Indeed, the D.C. Circuit explained that, "courts have been loath to find standing when redress depends largely on policy decisions yet to be made by government officials because the question of whether appellant's claims of economic injury would be redressed by a favorable decision in such a case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." <u>Miami Bldg.</u>, 493 F.3d at 205 (internal quotations and citations omitted).

Here, Plaintiff has not "adduce[d] facts" showing that the REB or the promotion board will promote him to the rank of Lieutenant Commander if the Court were to order Defendant to convene the two boards. There is no evidence (and Plaintiff fails to allege any) showing that either the REB or the promotion board will promote Plaintiff to "permit redressability of injury." Moreover, Plaintiff did not request that the Court order Defendant to promote him if he prevails in this case. Plaintiff merely requests the Court order the REB or the promotion board to convene (1) "for the purposes of examining" Plaintiff's fitness report; and (2) "for the purpose of determining **if Plaintiff would have been promoted, [ sic ] should Plaintiff's records expunged.**" Compl. at ¶ 34 (emphasis added). Plaintiff also asks that Defendant return Plaintiff to active service on the date of his discharge "**should Plaintiff be promoted** by that promotion board." <u>Id.</u> (emphasis added). Under these circumstances, whether Plaintiff's injury (non-promotion) can be

"redressed" depends entirely on the REB or the promotion board, not the Court.  Without

more, Plaintiff cannot show that he has standing to sue for failure to show that this

Court's favorable decision can effectuate his promotion.

> **B.**    **The Court Does Not Have Subject Matter Jurisdiction To Hear This Case**

As discussed in Defendant's Motion to Dismiss, the Court does not have

jurisdiction because the decision whether to convene the REB is committed to the

agency's discretion.  <u>See</u> Def. Mot. at 5-7.   Undeterred, Plaintiff cites <u>Lincoln v. Vigil</u>,

508 U.S. 182 (1993), to argue that the Court has subject matter jurisdiction under the

APA to review Defendant's decision not convene the REB.  <u>See</u> Opp. at 3.

Plaintiff's reliance on <u>Lincoln</u> is misplaced as that case actually supports

Defendant's argument that the exception to judicial review applies here.  In <u>Lincoln</u>, the

Supreme Court examined the decision of the Indian Health Service to terminate a health

program aimed at handicapped Indian children.  508 U.S. 182.  The Supreme Court found

that an agency's allocation of funds from a lump sum appropriation was committed to

agency discretion by law, and therefore, unreviewable.  <u>Id.</u>  In similar fashion, the NOAA

Corps' organic act and the Department of Commerce Order are silent on standards that

apply to the Director's decision in this case, thus committing the decision to agency

discretion.

Specifically, the Director is granted the authority by the Secretary of Commerce

to administer the NOAA Commissioned Corps.  <u>See</u> U.S. Department of Commerce

Departmental Organizational Order 25-5, Section 4 (.05) (Reply Gov. Exh. A) (only

applicable sections are attached).[1]  The NOAA Corps' organic statute governs the

personnel administration of the Corps and does not place any limitations on the

Secretary's or Director's ability to exercise his or her discretion in making decisions.  33

U.S.C. § 3001 *et seq*.  Additionally, and pursuant to its NOAA Corps Directives, the

Director has the discretion to convene a REB "[a]t such times as he/she may deem

necessary to determine whether or not information contained in a NOAA Corps officer's

Official Personnel File should be corrected or removed."  See NOAA Corps Directive

10009 (Def. Mot, at Gov. Exh. A).  Accordingly, because there is no standard against

which to judge this exercise of discretion (i.e., no law to apply), there is no meaningful

judicial standard of review to determine if the Director's decision not to convene a REB

was contrary to law.  Therefore, this determination is committed to agency discretion by

law, and unreviewable.  See 5 U.S.C. § 701(a)(2).  See also, Webster v. Doe, 486 U.S.

592, 600 (1988) (absent permitting cross-examination of a deciding official, the Court

saw "no basis on which a reviewing court could properly assess an Agency termination

decision").

Citing cases that reviewed the decision of the military armed services, Plaintiff

asserts that this Court has a meaningful standard against which to judge an agency's

exercise of discretion.[2]  Opp. at 4-5.  Plaintiff's argument lacks merit.  First, the cases

---

[1]  Plaintiff's assertion that the Director is granted the authority to administer the NOAA
Corps through 33 U.S.C. 3028(c) is misplaced.  See Opp. at 6. That statute simply
requires the Secretary of Commerce to designate the position of Director of the Corps and
of the Office and Marine and Aviation Operations as one of "importance and
responsibility"; a position for which it is appropriate to serve in the grade of vice admiral,
rear admiral or rear admiral (lower half).  33 U.S.C. 3028(a).  Thus, this section is not the
source of the Director's authority to administer the NOAA Corps.

[2]    Plaintiff's own argument underscores the Court's lack of subject matter
jurisdiction in this case.  Specifically, Plaintiff asserts that the Director should have

5

relied upon by Plaintiff are inapposite as they concern the application of military law.

Specifically, <u>Orloff v. Willoughby</u>, 354 U.S. 83 (1953) concerned the rights of inductees;

<u>Gilligan v. Morgan</u>, 413 U.S. 1 (1973), involved review of the actions taken by the militia

at Kent State; <u>Rostker v. Goldberg</u>, 453 U.S. 57 (1981), concerned the Military Selective

Service Act; <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983) reviewed allegations of race

discrimination in connection with assignments and performance evaluations; <u>Goldman v.

Weinberger</u>, 475 U.S. 503 (1986) reviewed an Air Force regulation which prevented a

Rabbi from wearing his yarmulke; and <u>Weiss v. United States</u>, 510 U.S. 163 (1994)

reviewed the appointment of military judges.[3]

      Here, however, it is undisputed that the NOAA Corps is not a military

organization, nor is it an armed service. Indeed, Plaintiff even acknowledges that this

case is not a typical case involving uniformed services and that the NOAA Corps is not

---

exercised discretion and convened an REB; however, Plaintiff maintains that the Director can convene an REB only under three conditions, none of which he believes apply here. <u>See</u> Opp. at 5. Following this argument to its conclusion, the Director does not have discretion to convene an REB outside of these three conditions. Accordingly, since the Director could not exercise his discretion (absent one of these three conditions), there is no action for this Court to review.

[3]     Plaintiff maintains that he was separated solely pursuant to 10 U.S.C §§ 632, 637. <u>See</u> Opp. at 5. However, this assertion is incorrect. Those two sections of Title 10 simply start the process whereby the NOAA Corps determines if a lieutenant or lieutenant commander, twice passed over for promotion, is either continued in active service or separated from the service. Section 632 of Title 10 provides that a lieutenant or lieutenant commander twice passed over for promotion shall be retired or separated, unless they are continued in active service pursuant to 10 U.S.C §637. <u>See</u> 10 U.S.C. § 632. That statute provides that an officer subject to discharge under Section 632 may, subject to the needs of the service, be continued on active duty. In order to determine whether an officer's separation is in the best interest of the service, the NOAA Corps looks to NCD 08501, which states that an officer's separation or retirement is considered in the best interest of the NOAA Corps if "performance is at a level below that expected of a NOAA Corps officer of his/her and or grade, and which fails to indicate potential for future growth or potential." NCD 08501A(1) (Def. Mot. Gov. Exh. A). Accordingly, Plaintiff was separated in the best interest of the service pursuant to NCD 08501, not under 10 U.S.C. §§ 632, 637.

subject to review under 10 U.S.C. § 1552. <u>See</u> Compl. at ¶ 21. Therefore, cases involving military services cannot be relied upon to confer the Court's subject matter jurisdiction in this case.[4]  Accordingly, the decision to convene an REB is a decision that is committed to the agency's discretion by law and is unreviewable by the Court. <u>See,</u> <u>e.g.</u>, <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985);  <u>Secretary of Labor v. Twentymile</u> <u>Coal Company</u>, 456 F.3d 151, 156 (D.C. Cir. 2006).

## III.  CONCLUSION

For the foregoing reasons and those set forth in Defendant's Motion to Dismiss, the Court should grant Defendant's Motion and dismiss this case for lack of subject matter jurisdiction.

Dated: February 4, 2008.                    Respectfully Submitted,


    /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610


    /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406


Attorneys for Defendant

---

[4]      The NOAA Corps is a uniformed service that is not generally governed by military law, except under rare and specific circumstances which do not apply to Plaintiff's case. <u>See</u> 10 U.S.C. § 101(a)(5)(B); 33 U.S.C. § 3071.

PRINT | CLOSE

# NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

**Number:** DOO 25-5            **Effective Date:** 2008-01-18

## SECTION 1. PURPOSE.

.01 This Order prescribes the organization, management structure, and assignment of functions within the National Oceanic and Atmospheric Administration (NOAA). The scope of authority and functions of NOAA are set forth in Department Organization Order 10-15.

.02 This revision:

a. transfers the Space Environment Center from the Office of Oceanic and Atmospheric Research (OAR) to the National Weather Service's (NWS) National Centers for Environmental Prediction, adding "space weather" prediction at the Centers;

b. changes the name of the Office of Public, Constituent, and Intergovernmental Affairs to the Office of Communications, and adjusts wording to reflect this change; also changes the names of the Decision Coordination and Action Office to the Decision Coordination Office, the Office of Human Resources to the Workforce Management Office, and the Office of Acquisition and Grants to the Acquisition and Grants Office;

c. changes the name of the Office of Education and Sustainable Development to the Office of Education, and removes all references to sustainable development functions;

d. adds the Educational Partnership Program with Minority Serving Institutions to the Office of Education and redefines some functions;

e. changes, within the National Environmental Satellite, Data and Information Service (NESDIS), the name of the Office of Research and Applications to the Center for Satellite Applications and Research;

f. transfers from the Office of Constituent Services to the Office of the Assistant Administrator within the National Marine Fisheries Service (NMFS), administering the Saltonstall-Kennedy Grant Program and overseeing related program activities in Regional Offices, and removes "financial services" from the Office of Constituent Services;

g. adds the Laboratories and Cooperative Institutes, and the Deputy Assistant Administrator for Programs and Administration (DAA PA) (existing position) and Deputy Assistant Administrator for Laboratories and Cooperative Institutes (DAA LCI) in OAR;

h. establishes in OAR, the Office of Policy, Planning, and Evaluation, and a communications staff office;

i. consolidates in OAR, the NOAA Undersea Research Program with the Ocean Exploration Program to form the Office of Ocean Exploration and Research; and combines the Climate Observations and Services Program with the Arctic Research Program and the Office of Global Programs to form the Climate Program Office; and

j. transfers, within the National Ocean Service (NOS), three offices – the Office of National Marine Sanctuaries (formerly called the National Marine Sanctuaries Program), the NOAA Coastal Services Center (CSC), and the Center for Operational Oceanographic



GOVERNMENT EXHIBIT

A

Products and Services (CO-OPS) – to the Office of the Assistant Administrator, and adds Executive Order 13158 Marine Protected Areas.

## SECTION 2. ORGANIZATION STRUCTURE.

The organizational structure of NOAA shall be as depicted in the attached organization chart(Exhibit 1).

## SECTION 3. OFFICE OF THE UNDER SECRETARY OF COMMERCE FOR OCEANS AND ATMOSPHERE AND ADMINISTRATOR.

.01 The Under Secretary of Commerce for Oceans and Atmosphere and Administrator (Under Secretary/Administrator) of NOAA formulates policies and programs for achieving the objectives of NOAA and has the authority for program execution.

.02 The Assistant Secretary of Commerce for Oceans and Atmosphere and Deputy Administrator (Assistant Secretary/Deputy Administrator) of NOAA assists the Under Secretary/Administrator in formulating policies and programs and directs their execution.

.03 The Deputy Under Secretary for Oceans and Atmosphere shall serve as an advisor to the Under Secretary/Administrator and Assistant Secretary/Deputy Administrator on all program and policy issues and shall be responsible for ensuring the timely and effective implementation of directives from the Under Secretary and Assistant Secretary. The Deputy Under Secretary shall oversee the development of and recommend policies and programs to meet NOAA's objectives in accordance with the Under Secretary and Assistant Secretary; coordinate the implementation of policies promulgated by the Under Secretary/Administrator and Assistant Secretary/Deputy Administrator; coordinate actions required of NOAA in response to Executive Branch policy decisions; develop, plan, and coordinate major program efforts; and exercise delegated authority in committing NOAA to courses of action. The Deputy Under Secretary shall assist the Under Secretary/Administrator and Assistant Secretary/Deputy Administrator in the administration of programs and operations of NOAA.

.04 The Chief of Staff shall report to the Under Secretary/Administrator and provide direct support to the Office of the Under Secretary in the formulation and implementation of administration policies and program operations of NOAA. The Chief of Staff shall oversee all NOAA staff office budgets and related policies, have final approval authority for all personnel details outside of NOAA, exercise responsibility for insuring staff work and
resources are properly marshaled to achieve the timely and effective implementation of objectives and policies, and serve as the Under Secretary/Administrator's principal advisor.

.05 The Deputy Assistant Secretary for Oceans and Atmosphere shall be a key advisor to the Under Secretary/Administrator and Assistant Secretary/Deputy Administrator on program and policy issues. The Deputy Assistant Secretary shall:

a. review, evaluate, and recommend policy and program initiatives to the Under Secretary/Administrator and Assistant Secretary/Deputy Administrator, oversee the development of these initiatives, and, as requested, coordinate the implementation of new NOAA policy;

b. coordinate actions required of NOAA as a result of Administration policy decisions and

actions;

c. assist in the administration of programs and operations of NOAA, ensuring they are administered in accordance with agency goals and objectives, and resolving program and policy issues that arise between the line and staff offices;

d. participate in executive level liaison missions, conferences, and other special and confidential assignments with other federal agencies, Congress, and private industry, at the request of the Office of the Under Secretary; and

e. represent the Office of the Under Secretary in any area of NOAA's activities and programs, with broad authority to commit to specific courses of action.

.06 The Deputy Assistant Secretary for International Affairs shall be a key advisor to the Under Secretary/Administrator on international policy issues; be responsible for planning and coordinating NOAA's international programs; carry out, as directed by the Office of the Under Secretary, tasks of special interest related to international activities; and exercise a leadership role in establishing policies, guidelines, and procedures for NOAA's international programs. The Deputy Assistant Secretary shall:

a. coordinate NOAA's major international activities including those programs that overlap Assistant Administrators' or Staff Office Directors' interests or responsibilities;

b. support the development and coordination of NOAA's international policies regarding trade and environment issues and the negotiation of trade agreements;

c. coordinate NOAA's interactions on international issues with other federal departments and agencies, as well as other bureaus within the Department;

d. develop Administration policy on international issues affecting NOAA;

e. coordinate NOAA's participation in United States (U.S.) delegations to international fora; and

f. participate in the negotiation of international agreements and provide appropriate representation of NOAA and the Department at international fora on environmental issues.

.07 The Office of Military Affairs, which includes the Naval and Air Force Deputies, shall focus on facilitating coordination and joint planning efforts with military services and other Department of Defense (DOD) offices with programs between DOD and NOAA Line Offices and the Office of Marine and Aviation Operations on programs of mutual organizational interest. The Office shall:

a. initiate and facilitate interactions between offices in NOAA and DOD on programs that can be used to leverage assets of both organizations; and

b. assist NOAA offices in solving problems with other agencies as required.

## SECTION 4. STAFF OFFICES REPORTING TO THE OFFICE OF THE UNDER SECRETARY.

.01 The Office of Communications shall provide advice and counsel to the Office of the Under Secretary, Assistant Administrators, and Program/Staff Office Directors and their

staffs on media, constituent, and intergovernmental relations. This Office shall:

a. establish policies and guidelines for communicating NOAA's activities to the media, constituencies, and other audiences, both internally and externally;

b. provide a wide range of services to the media including responding to all inquiries, planning and conducting news conferences and media briefings with the Office of the Under Secretary, Assistant Administrators, and Program/Staff Office Directors; offering story ideas to the media; and writing news releases and public service announcements (for television and radio);

c. provide services to the public and NOAA's constituencies including writing fact sheets and news releases, responding to inquiries, coordinating conferences and briefings, and responding to other constituency needs;

d. act as NOAA's central point of contact for all external communications including writing news releases, editorials, and letters to the editor, researching and writing fact sheets and background materials, designing brochures, providing exhibit and media support services at conferences, and responding to inquiries from the general public for written materials about NOAA;

e. serve as NOAA's central focus for internal communications by generating a monthly electronic newsletter, preparing and distributing daily news clips, tracking broadcast news stories and providing transcripts and video/audio copies to NOAA management, distributing news releases internally, and participating actively in the development of strategic communications plans;

f. work with public and private sector organizations for collaborative outreach projects, planning and conducting ceremonies and dedications, and supporting NOAA and the Department of Commerce (the Department) in special projects that require media, public, or constituent affairs expertise;

g. produce video news releases, video footage of agency science and operations, or videos for NOAA stakeholder audiences, and maintain libraries of NOAA videos and news footage;

h. provide media training for NOAA officials;

i. respond to public inquiries with outreach materials updated and maintained by the correspondence unit;

j. review and approve all NOAA publication requests, providing advice when applicable, including ensuring proper use and appearance of the NOAA emblem;

k. coordinate intergovernmental duties for NOAA; and

l. coordinate the office's activities with the Department's Office of Public Affairs.

.02 The Office of Education shall provide advice and counsel to the Office of the Under Secretary and the Department on matters dealing with education. The Office shall:

a. represent NOAA on education issues;

b. serve as the lead for intra-NOAA education coordination;

c. provide expert support on education activities to NOAA's Line and Staff Offices;

d. promote NOAA services and products, and their benefits to the public;

e. seek out opportunities for NOAA to contribute to ocean, climate, and atmospheric science education;

f. advise the Under Secretary on policies and programs related to formal and informal education; and

g. provide financial assistance to minority serving institutions to support formal education and collaborative research of students in NOAA-related sciences through competitive processes sponsored by the Educational Partnership Program and other mechanisms.

.03 The Office of Legislative Affairs shall coordinate all NOAA contacts with Congress and shall be responsible for the planning, direction, and coordination of legislative programs that are of immediate concern to the Office of the Under Secretary. The Office shall:

a. serve as the primary liaison for NOAA with the members and staff of Congress;

b. identify and track all legislation of interest to NOAA, keeping the Office of the Under Secretary and Assistant Administrators informed;

c. assist in the development of positions setting forth NOAA's views on the merits of proposed or pending legislation, receive requests for preparation of testimony before Congress, and coordinate responses to questions submitted for the record by members and staff;

d. direct and coordinate NOAA's crosscutting and special interest congressional and legislative activities;

e. provide leadership to improve communications and coordination among legislative activities within NOAA's Line and Staff Offices, and provide oversight of those programs; and

f. coordinate the Office's activities with the Department's Office of Legislative and Intergovernmental Affairs.

.04 The Office of General Counsel shall assist the General Counsel of NOAA in carrying out his or her statutory functions established by Reorganization Plan No. 4 of 1970. These functions shall be carried out subject to the authority of the Department's General Counsel, as provided in DOO 10-6.

.05 The Office of Marine and Aviation Operations (OMAO) shall develop plans and administer the use, operation, maintenance, and upgrade of NOAA ships, aircraft, small craft, and associated equipment and facilities in support of NOAA's programs and other activities, and shall administer the NOAA Commissioned Officer Corps. The Director of OMAO shall be the Director of the NOAA Commissioned Officer Corps. The Office shall:

a. administer the operation of ships, field parties, and other entities under Marine Operations Center jurisdiction for acquiring and processing oceanographic, hydrographic, photogrammetric, fisheries, and other data required by the NOS, National Marine Fisheries Service (NMFS), Office of Oceanic and Atmospheric Research (OAR), and other NOAA and non-NOAA elements;

b. administer the operation of aircraft for acquiring data in support of NOAA's programs and other activities;

c. conduct fleet and aircraft operations in accordance with the decisions of the NOAA Fleet and Aircraft Allocation Councils, and, insofar as is practical, coordinate NOAA's fleet and aircraft operations with those of non-NOAA operators;

d. coordinate chartering of non-NOAA vessels and aircraft;

e. perform the overall program management function for designated major systems, prepare statements of mission need, develop overall systems architecture and requirements, ensure operational requirements fulfill mission needs, develop program manager/system acquisition manager agreements and program plans, and monitor the development and oversee the implementation of new systems;

f. administer the NOAA operational diving program, establish policies and procedures to ensure a safe and efficient diving program to support NOAA's program needs, and coordinate with non-NOAA agencies engaged in diving programs;

g. administer NOAA's Small Boat Safety Program, establish policies and procedures to ensure a safe small boat program to support NOAA's program needs, identify applicable regulations, provide operator training, staffing guidance, and marine engineering assistance on boat alterations, boat design and selection criteria;

h. provide direction for labor relations activities, medical affairs, training, safety, and other personnel matters unique to commissioned officers and vessel employees assigned to the fleet and the aircraft;

i. develop and implement policies and procedures for the recruitment, commissioning, training, assignment, promotion, separation, and retirement of commissioned officers;

j. administer the pay, allowances, health care, and survivor benefits programs for active duty and retired officers, dependents, and annuitants; and

k. represent NOAA in interdepartmental activities affecting the uniformed services and other activities of mutual interest.

.06 The Office of Program Analysis and Evaluation shall conduct the independent and objective analysis and evaluation of plans, programs, and requirements as they relate to the goals and strategies of the strategic plan, and review all significant program initiatives and major requirements, as well as provide support to analyses done within Line and Staff Offices.

.07 The Office of the Chief Financial Officer shall provide policy and staff support in the areas of budget formulation and execution, resource management, financial systems development and operations, and financial accounting to NOAA components and other Department bureaus. It shall serve as the liaison with the Office of the Secretary on these matters.

.08 The Office of the Chief Administrative Officer shall provide policy, staff support and services throughout NOAA in the areas of facilities, environmental compliance, occupational safety and health, emergency preparedness, information systems, civil rights and equal employment opportunity, records and directives management, executive secretariat, and audit and internal control activities including all Government Accountability Office or Office of Inspector General audits of NOAA's activities. It shall

serve as the liaison with the Office of the Secretary on these matters.

.09 The Workforce Management Office shall serve as the focal point for developing and monitoring the implementation of human resources management, organization management, and diversity management policies and programs throughout NOAA and for the administration of NOAA payroll activities. It shall serve as the liaison with the Office of the Secretary on these matters. The Office provides oversight of the NOAA Commissioned Officer Corps, to include the review and preliminary approval of human resources policies and procedures,
prior to submission to the Department's Office of Human Resources Management (OHRM) for review and approval; and, the review and approval of appointments and promotions prior to forwarding them to the Department's OHRM for clearance.

.10 The Acquisition and Grants Office shall provide a full range of support services throughout NOAA for procurement and grants management, and serve as the focal point for the administration of NOAA's program for ensuring compliance with Federal, Departmental, and NOAA regulations. It shall serve as the liaison with the Office of the Secretary on these matters.

.11 The Program Coordination Office shall provide senior staff support to the Offices of the Under Secretary, Assistant Secretary, Deputy Under Secretary, and Chief of Staff. The Office shall:

a. review proposals coming to the Office of the Under Secretary, Assistant Secretary, Deputy Under Secretary, and Chief of Staff for information and/or action, and make recommendations as required;

b. provide advice on management and fiscal issues before the agency and participate in meetings on such matters coming before the Office of the Under Secretary, Assistant Secretary, Deputy Under Secretary, and Chief of Staff, and, as required, shall be their representative;

c. serve as a representative of the Office of the Under Secretary, Assistant Secretary, and Deputy Under Secretary working with NOAA's Line and Staff Offices to ensure adequate coordination and attempting to resolve differences dealing with programmatic, scientific, and management issues within the Agency;

d. represent the Office of the Under Secretary and Assistant Secretary in interagency meetings and coordinate actions within NOAA and the Department as required;

e. advise the Office of the Under Secretary, Assistant Secretary, and Deputy Under Secretary on broad management initiatives and high priority issues requiring immediate attention;

f. provide briefings, as requested, on a broad range of issues with respect to actions and decisions that affect all program operations and have impact nationwide;

g. provide comprehensive analyses relating to proposed initiatives, conduct background research and short-term feasibility studies, and develop general plans to define objectives and coordinate work to be undertaken;

h. develop recommendations or conclusions for the Office of the Under Secretary, Assistant Secretary, Deputy Under Secretary, and Chief of Staff based on careful study/analysis of the material presented, requiring full understanding and consideration of NOAA policies, project management commitments and other relevant factors; and

i. provide general staff support to the Office of the Under Secretary, Assistant Secretary, Deputy Under Secretary, and Chief of Staff, and serve as a focal point for coordination and/or preparation of a variety of NOAA's program reports, events calendars, and management meetings.

.12 The Decision Coordination Office (DCO) shall provide senior staff support to the Office of the Deputy Under Secretary. The Office shall:

a. organize meetings of the NOAA Executive Council (NEC) and NOAA Executive Panel (NEP), including preparing agendas and providing briefing materials to members; following meetings, the DCO prepares minutes and action memorandum to document and implement decisions made by the NEC and NEP; and

b. provide guidance to NOAA's senior leadership on a variety of NOAA-wide issues.

.13 The Office of the Chief Information Officer and High Performance Computing and Communications (CIO-HPCC) shall implement the provisions of the Clinger-Cohen Act of 1996, the Paperwork Reduction Act, the Federal Information Security Management Act of 2002, the Data Quality Act, and other directives regarding the acquisition, management, security, and use of information technology (IT) resources; lead the improvement of NOAA's operations and service delivery using IT systems; promote NOAA's effective use of IT to accomplish its mission; lead NOAA's principal IT research efforts implementing the High Performance Computing and Communications Act of 1991 through the NOAA High Performance Computing and Communications (HPCC) Program; promote and shape an effective strategic and operational IT planning process for NOAA; lead the development and implementation of the NOAA information architecture, coordinate the preparation of NOAA's IT budget and associated materials; oversee selected NOAA-wide operational IT systems, networks, and services; coordinate all plans, programs and policies regarding homeland security; plan for continuity of operations and evacuations; ensure development and execution of plans for continued delivery of services; develop plans and procedures to promote the safety and security of NOAA's people and facilities; create and oversee an Incident Coordination Center; and in coordination with the Departmental Office of the Chief Information Officer, shall be responsible for other assigned programs that are intra-agency, interagency and/or international in scope.

.14 The Office of the Federal Coordinator for Meteorology shall discharge federal coordination functions for the Department in response to Section 304 of Public Law 87-843, the Appropriations Act for State, Justice, Commerce, and Related Agencies; establish procedures for systematic and continuing review of national basic and specialized meteorological and oceanographic requirements for services and supporting research; prepare and maintain federal plans to achieve integration of current and future services and supporting research consistent with effective and economical accomplishment of national requirements; bring federal agencies concerned with international activities and programs in meteorological and oceanographic programs into close consultation and coordination; assist the Federal Coordinator in his or her role; direct independent studies and surveys as required by the Federal Coordinator; and manage the interagency committee structure used for reporting, coordinating, and planning functions.

.15 Administrative Delivery Points. NOAA has five delivery points (Seattle, Washington; Boulder, Colorado; Kansas City, Missouri; Norfolk, Virginia; and headquarters in Silver Spring, Maryland) that provide a suite of dministrative support services to regional NOAA offices and other Department bureaus. While those delivery points physically house staff members, those staff members are functionally aligned to report to NOAA's Office of the

Chief Financial Officer, Office of the Chief Administrative Officer, Workforce Management Office, Acquisition and Grants Office, and the Office of the Chief Information Officer and High Performance Computing and Communications, all of which are located at NOAA Headquarters in Silver Spring, Maryland. The services provided include acquisition management, financial management and accounting, human resources, information technology, procurement, facilities and logistics management, and environmental compliance and safety, among other services.

## SECTION 5. NATIONAL MARINE FISHERIES SERVICE.

.01 The Assistant Administrator for Fisheries shall be responsible for an integrated NOAA living marine resources program and be Director of the NMFS. The NOAA living marine resources program shall promote the conservation, management, and sustainable use of living marine resources for commercial and recreational use. The program shall include services and products to support the administration of NOAA's fisheries management operations; international
fisheries management obligations; constituent services activities; protected resources and habitat conservation operations; enforcement operations; and the scientific and technical aspects of NOAA's living marine resources programs. The Assistant Administrator shall develop and support a coordinated program of scientific research and development to implement programs, and shall be responsible for ensuring the overall quality and effectiveness of all
products and services. The Assistant Administrator shall also serve as a mission manager for designated major systems, with the overall responsibility to ensure that NMFS mission needs are analyzed and identified, that an overall NMFS systems architecture is developed, that requirements are defined, and that the context, justification, and budget needed to meet those requirements are developed and advanced.

.02 The Office of the Assistant Administrator shall manage NMFS and coordinate the living marine resources programs throughout NOAA to ensure the compatibility and effectiveness of all of NOAA's living marine resources activities. The Office shall:

a. determine requirements and develop long-term plans for living marine resources programs;

b. coordinate with and receive support from the Assistant Administrator for Ocean Services and Coastal Zone Management, including the assessment of the effects of hazardous spills, oil pollution, ocean dumping, and coastal zone development on living marine resources and the environment;

c. monitor living marine resources environmental information and weather forecasting activities of the NWS and NESDIS to ensure adequate coordination of efforts;

d. coordinate the research programs in living marine resources with the research programs of NOS and OAR and the other Line Offices to avoid duplication of effort among NOAA research activities, and to ensure that results are used fully in planning collaborative programs and providing services;

e. perform the overall program management function for designated major systems, prepare statements of mission need, develop overall systems architecture and requirements, ensure that operational requirements fulfill mission needs, develop program manager/system acquisition manager agreements and program plans, and monitor the development and oversee the implementation
of new systems;